[Civ. No. 4437.   Fourth Dist.   Dec. 18, 1951.]

ADDIE B. HORTON, Respondent, v. MERKLE C. JOHNSTON et al., Appellants.

C. W. Byrer for Appellants.

Meserve, Mumper & Hughes for Respondent.

MUSSELL, J.—In this action to foreclose a lien, plaintiff sought to recover sums paid by her for taxes, assessments and maintenance charges on certain real property in Riverside County described as Lot 11, Block "A" of Idyllwild Mountain Park Company's Subdivision No. 12.   This property is

owned by appellants Merkle C. Johnston, Donna M. Johnston and plaintiff as tenants in common. While the action is to foreclose a lien, the main purpose in filing it was to secure a judgment determining that a trust deed in the sum of $4,000 was and is not a lien against plaintiff's one-half interest in the land. Carrie A. Horton (the owner of the trust deed) and the Johnstons (who filed a cross-complaint) appeal from the judgment entered for plaintiff. The question involved is whether the evidence is sufficient to support the findings and judgment.

### Relationship of Parties

Plaintiff Addie B. Horton and Kenneth E. Horton are husband and wife, and on August 3, 1948, an interlocutory decree was entered in a divorce action between them. Carrie A. Horton is the mother of Kenneth E. Horton and appellant Donna M. Johnston. Merkle C. Johnston and Donna M. Johnston are husband and wife.

### Facts

On August 6, 1946, plaintiff Addie B. Horton agreed through a real estate broker to purchase the property here involved as her separate property. She signed a real estate broker's receipt and deposited with the broker a check in the sum of $400, payable to Farmers and Merchants Bank of Hemet. The receipt provided, among other things, that the purchase price of the property was $8,750; that the "balance was to be paid in cash inside of ninety days, possession close escrow." On October 4th plaintiff gave the real estate broker another check in the sum of $600, payable to the same bank, to apply on the purchase price of the property. Plaintiff testified that she bought the property with the proviso of selling her home in East Los Angeles and it was understood that the payment of the balance of the purchase price was contingent upon such sale; that the purchasers were not able to go through with the sale and the property was again placed in escrow for a second sale.

The record shows that on November 8, 1946, the Farmers and Merchants Bank demanded the deposit of the balance of the purchase price and that plaintiff was unable to obtain it. Kenneth E. Horton testified that he agreed to purchase the property when the plaintiff lost the sale of her home in Los Angeles. On December 10th he wrote to the bank advising it that within a few days he would be in to give instructions, and on December 26th escrow instructions were executed at the

said bank by R. T. O'Donnell and Delta A. O'Donnell, as sellers, and Kenneth E. Horton, as purchaser, of the Idyllwild property. The purchase price was stated to be the sum of $8,750. This sum was to be paid as follows: The $1,000 then on deposit with the bank to be credited on the purchase price; $4,000 from loan secured by trust deed from Kenneth E. Horton to Carrie A. Horton, and $3,759 in cash. The title to the property was to be vested in Kenneth E. Horton as his separate property. Apparently plaintiff was not present at the time these escrow instructions were executed and her signature to them was not obtained.

On January 2, 1947, while Kenneth E. Horton and plaintiff were visiting the home of Carrie A. Horton, Kenneth Horton obtained the sum of $4,000 from his mother to apply on the purchase price of the property. He executed a promissory note and trust deed in which his mother was beneficiary. This trust deed was deposited in the bank escrow and was notarized on January 9, 1947. On February 5th Kenneth E. Horton deposited the sum of $3,900 in the escrow. This money was received by him from the sale of his separate property. The bank then advised Horton that it would be necessary to obtain a quitclaim deed from Addie B. Horton before the escrow could be closed and on February 26th, plaintiff signed and acknowledged a quitclaim deed to the property to Kenneth E. Horton and deposited it in escrow with instructions that it be used when the sum of $1,000 was paid to her from the escrow. The bank then advised Horton of the deposit of the quitclaim deed and asked for further instructions as sufficient money was not in escrow to close the deal if and after the $1,000 was paid to plaintiff in accordance with her demand. Kenneth E. Horton then procured an additional $1,000 from Carrie A. Horton and gave her a note and second trust deed therefor. These papers, together with the sum of $1,000 were deposited in escrow March 11, 1947. The bank then gave an order to a title company to file the papers and issue a certificate of title. On March 13th a deed from the O'Donnells to Kenneth E. Horton, as his separate property, of the Idyllwild property, the quitclaim deed of Addie B. Horton to Kenneth E. Horton, the $4,000 first trust deed and the $1,000 second trust deed from Kenneth E. Horton to Carrie A. Horton were recorded and the escrow closed. On the same date a certificate of title was issued by the Security Title Insurance and Trust Company of Riverside showing title to the property to be vested in Kenneth E. Horton as his sole and separate

property, subject to a first trust deed of $4,000 and a second trust deed for $1,000. The following day Addie B. Horton received from the bank the $1,000 previously deposited by her and which she had demanded from the bank.

On March 11, 1947, Kenneth E. Horton filed a divorce action in Los Angeles County against Addie B. Horton, in which he alleged that there was no community property belonging to the parties. Addie B. Horton, on March 23, 1948, filed a cross-complaint in that action alleging, among other things, that the parties were the owners of the property here in question, as community property, and asked that all of the community property of the parties be awarded to her. The action was heard on July 9, 1948, and the court awarded each of the parties an undivided one-half interest in and to the real property herein. The $4,000 trust deed was not referred to in the findings and judgment entered in the divorce action and appellant Carrie A. Horton was not named therein as party defendant.

On April 23, 1949, Kenneth E. Horton executed a deed of his one-half interest of the Idyllwild property to appellants Merkle C. Johnston and Donna M. Johnston. This deed was recorded May 5, 1949, in Riverside County.

The trial court correctly found that defendant Carrie A. Horton loaned Kenneth E. Horton the sum of $4,000 in cash and he executed the promissory note and trust deed therefor. However, the court further found that the trust deed was only a lien upon the undivided one-half interest of appellants Merkle C. Johnston and Donna M. Johnston and that plaintiff Addie B. Horton is the owner of an undivided one-half interest in the property involved as her separate property, free and clear of any claims of appellants Carrie A. Horton or the Johnstons. These findings are not supported by substantial evidence. The trust deed is a lien on the entire property. The policy of title insurance issued to Kenneth Horton shows that the property is subject to the trust deed in question. The $4,000 was deposited in escrow and applied to the purchase price of the entire property. On February 26, 1947, plaintiff went to the bank handling the escrow and there authorized the vice-president in writing to use a quitclaim deed in favor of Kenneth Horton upon payment to her of the $1,000 which she had paid the real estate broker. According to her own testimony she knew that "they were having trouble with the escrow because some of the parties needed some of the

money.'' She stated that ''she inquired about the money she had up in the bank'' and that the vice-president said ''Well, why don't you go do this. Give him a deed allowing him to go ahead with the escrow so he could relieve whoever it was who needed some money—a loan, I think, or something, and he would reimburse me for the money I had up there in the bank until I could get back home.'' Plaintiff made no deposit in the escrow other than the $1,000 which she had delivered to the real estate broker and the evidence clearly shows that she was interested only in securing the return of her deposit.

Plaintiff testified that on January 20, 1947, she executed a deed to the property here involved to Kenneth Horton; that the deed was not notarized and ''the purpose of that deed was so that he could show the bank that he had—that he could handle my real estate or look after it in whatever manner he had to until I would get back home.'' This testimony clearly indicates that authority was given to Kenneth Horton to take whatever steps he considered necessary to protect plaintiff's deposit. By executing and delivering a new deed and accepting her deposit, plaintiff waived any claim as purchaser under the terms of the escrow.

Kenneth Horton testified that he agreed to purchase the property in question when plaintiff lost the sale of her Los Angeles home and the conversation in which the agreement was reached took place at plaintiff's home early in October of 1946; that plaintiff then agreed to let him use the $1,000 deposit made by her until he could reimburse her or the property was sold.

Plaintiff argues that Carrie Horton was not an encumbrancer in good faith. This argument is apparently based upon the theory that Carrie Horton knew at the time she loaned the money to her son that plaintiff had or claimed an interest in the property. The evidence is that plaintiff claimed no interest at the time the loan was made and that Carrie Horton advanced the money upon her son's statement to her that plaintiff had nothing to do with the transaction. While Carrie Horton knew that her son and his wife were having marital trouble, the divorce action was not filed until March 11, 1947. The transaction by which the $4,000 was to be obtained was set forth in the escrow instructions and if plaintiff desired to object to the terms of the escrow, she had ample opportunity to do so. As noted, Carrie Horton was not a party to the divorce action and the trust deed was not referred to in the

decree. Plaintiff was awarded a one-half interest in the property by the judgment in the divorce action but that decree did not affect the Carrie Horton trust deed.

The trial court's findings and judgment as to the sums paid by plaintiff for taxes, assessments and maintenance of the property are sufficiently supported by the evidence and no serious question is raised as to the liability of the Johnstons for one half of such sum. The judgment, insofar as it purports to decree that the deed of trust is not a lien on plaintiff's interest in the property; that it is only a lien on the interests of the Johnstons and that the lien of plaintiff is prior to the trust deed is reversed. The remaining portion of the judgment is affirmed. Plaintiff to pay costs.

Barnard, P. J., and Griffin, J., concurred.

A petition for a rehearing was denied January 14, 1952, and respondent's petition for a hearing by the Supreme Court was denied February 14, 1952.